UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HAROLD C. SHAVER,

                              Plaintiff,

    -v.-                                                               7:05-CV-1162
                                                                                  (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## **DECISION AND ORDER**

      Plaintiff commenced this action seeking judicial review of a decision by the Commissioner of Social Security denying disability insurance benefits ("DIB"). Plaintiff requests that this Court reverse the decision and remand to the Administrative Law Judge to further develop the record. The Commissioner seeks to affirm the decision. This Court has jurisdiction to review an unfavorable decision of the Commissioner under 42 U.S.C. § 405(g). For the reasons laid out below, the Court reverses and remands this case for further consideration.

**I.    Background**

A.    Procedural History

      Plaintiff filed for DIB on August 5, 2003, alleging disability as of January 21, 2003. Tr. at 44-46.[1] This application was denied, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 26-31. A hearing was held on December 8, 2004, and on January 14, 2005, the ALJ issued a decision which found Plaintiff not disabled. Id. at 10-23, 338-403. This decision became the final decision of the Commissioner when the Appeals Council denied review on August 26, 2005. Id. at 5-8. This action followed.

---

[1] "Tr." refers to the administrative transcript in this case. (Dkt. No. 9).

B.  Contentions

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence. He claims that the ALJ erroneously (1) disregarded the opinions of Plaintiff's treating physician; (2) improperly evaluated Plaintiff's non-exertional impairments and misapplied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, or "grids"; and (3) failed to properly evaluate Plaintiff's credibility.  Pl.'s Br., at 7-22 (Dkt. No. 8).  The Commissioner counters that substantial evidence supports the ALJ's decision.  Def.'s Br., at 5-13 (Dkt. No. 10).

C.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. Pl.'s Br. at 1-9; Def.'s Br. at 2-8.

**II.  Analysis**

A.  Standards and Scope of Review

When reviewing the Commissioner's final decision under 42 U.S.C. 405(g),[2] the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted).  It does not determine *de novo* whether a claimant is disabled.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (citation omitted).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ, and that decision is subject to judicial review on appeal.  A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be

---

[2] The Section 405(g) standard of review in disability insurance proceedings under Title II of the Social Security Act also applies to supplemental security income proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3).  Similarly, the analysis of supplemental income claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to disability claims under Title II.  See Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003).

supported by substantial evidence. See Pollard v. Halter, 377 F.3d 183, 188-89 (2d Cir. 2004) (citation omitted); Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). "Failure to apply the correct legal standards is grounds for reversal." Pollard, 377 F.3d at 189 (internal quotation marks and citation omitted).

A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision. See 42 U.S.C. § 405(g); see also Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See 42 U.S.C. § 405(g); Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

The court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g); Butts, 388 F.3d at 385. Remand is warranted where there are gaps in the record and further development of the evidence is needed, or

3

where the ALJ has applied an improper legal standard. See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose. Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability). However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits. See Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

B.     Five-Step Disability Determination

A plaintiff seeking Social Security Disability Insurance (SSDI) or SSI benefits is disabled if she can establish that she is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)[3] (emphasis added).

---

[3] In addition, a claimant's physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

4

The Commissioner uses a five-step process to evaluate SSDI and SSI claims. See 20 C.F.R. §§ 404.1520, 416.920. Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, she is not considered disabled. However, if she is not engaged in SGA, Step Two requires that the ALJ determine whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. See Ferraris, 728 F.2d at 584. If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's residual functional capacity (RFC) precludes the performance of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). At Step Five, the ALJ determines whether the claimant can do any other work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant has the burden of showing that she cannot perform past relevant work. Ferraris, 728 F.2d at 584. However, once she has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that she can perform some less demanding work. See White v. Sec'y of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990); Ferraris, 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if she can perform other work existing in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); see New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Plaintiff met the nondisability requirements set forth in Section 216(i) of the Social Security Act and was insured for disability insurance benefits through

5

September 30, 2003.[4] The ALJ found that Plaintiff satisfied Step One because he had not worked since his alleged onset date of disability, January 21, 2003. Tr. at 21. In Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: status post right hip replacement, chronic obstructive pulmonary disease with mild restriction, insulin-dependent diabetes mellitus Type II with non-compliance with diet, arthritis of the hips, and sleep apnea.[5] Id. In Step Three, the ALJ determined that Plaintiff's impairments failed to meet or equal a combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (the "Listings"). Id. In Step Four, the ALJ determined that Plaintiff retained the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with no limitations in pushing and pulling. Id. at 22. The ALJ also found that Plaintiff should avoid concentrated exposure to extremes of temperature and working with hazards. Id. At Step Five, the ALJ found that Plaintiff was unable to perform any of his past relevant work, but that he could perform other work existing in significant numbers in the national economy. Id. The ALJ based this conclusion on the Medical-Vocational Guidelines, finding that Plaintiff's RFC was not significantly affected by non-exertional limitations. Id.

C.   Treating Physician Rule

Plaintiff argues that the ALJ failed to properly weigh the opinions of his treating physician, Dr. Comeau. Pl.'s Br. at 12-17. Generally, the opinion of a treating physician is given controlling

---

[4] For this reason, Plaintiff was required to establish that he became disabled prior to the expiration of his insured status. See Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989).

[5] The ALJ also found that Plaintiff's depression, cataract, hypertension, and heart condition were not severe impairments existing on or before Setpember 30, 2003, the date last insured. Tr. at 21.

weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998). An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion. Rosa, 168 F.3d at 79. Thus, if the treating physician's opinion is not given controlling weight, the ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); see 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." Snell, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. Id. Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff specifically points to two reports from Dr. Comeau which appear in the record. In the first, dated September 8, 2003, Dr. Comeau opined that Plaintiff was limited to occasionally carrying ten pounds, with twenty pounds being the maximum he could carry. Tr. at 175. He also stated that Plaintiff could stand and/or walk for up to two hours per day, sit for up to six hours per

7

day, and push and pull to an unlimited extent. Id. at 176. Dr. Comeau indicated that Plaintiff did not require an assistive device for ambulation. Id. at 175. He added, "I believe this [patient] is disabled." Id. at 177. The second evaluation, completed on April 28, 2004, indicated that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently; stand and/or walk for less than two hours per day; must periodically alternate sitting and standing; and was limited in pushing and pulling in the lower extremities. Id. at 292. By way of explanation, Dr. Comeau wrote that Plaintiff had osteoarthritis of the hips, high body mass index ("BMI"), and limitations on exertion. Id. at 292. Dr. Comeau also opined that Plaintiff could occasionally climb but never balance, kneel, crouch, crawl, or stoop; could only occasionally handle, finger, and feel due to peripheral neuropathy in the feet and hands; and was limited in seeing. Id. at 293. Dr. Comeau stated that these restrictions had been in place since the alleged onset date of January 21, 2003. Id.

The ALJ considered the September 8, 2003 opinion, which was rendered just before Plaintiff's insured status expired on September 30, 2003, and accorded it substantial weight. Id. at 18. The ALJ stated that he "substantially accepted this opinion subject to modification by the claimant's testimony, as described below in greater detail." Id. The ALJ went on to explain that Plaintiff had testified that "his ability to walk after the alleged onset date through the date last insured was the same as before the alleged onset date." Id. Based on this conclusion, the ALJ presumed an ability to stand and/or walk for six hours in an eight-hour workday. Id. at 20.

The ALJ also considered Dr. Comeau's April 28, 2004 opinion, and accorded it no weight because he found it inconsistent with Dr. Comeau's earlier opinion, since the April 28, 2004 opinion stated that the more restrictive limitations had been in place during the time period encompassing the September 30, 2003 opinion. Id. Additionally, the ALJ noted that the April 28, 2004 opinion was given after Plaintiff's insured status had expired on September 30, 2003. Id.

8

After a review of the record, the Court concludes that the ALJ gave inadequate reasoning for rejecting the treating physician's opinions. The ALJ's decision repeatedly notes that Plaintiff conceded that his ability to walk was the same before the alleged onset date through the date of last insured. Id. at 18-19. A review of the hearing transcript, however, reveals that Plaintiff testified to having extensive limitations in walking just before his alleged onset date of January 21, 2003 – limitations that existed while he still worked and ultimately rendered him unable to work. See id. at 399-402. While Plaintiff did agree with Dr. Comeau's September 8, 2003 assessment of his limitations, he never testified that he did not have problems walking at his onset date. Id. at 401-02. Moreover, Plaintiff agreed that he could walk a *total* of two hours in an eight-hour workday, which would account for a need to alternate between sitting and standing. Id. at 402. This would conform with Dr. Comeau's later assessment that Plaintiff had to alternate between sitting and standing, which is not necessarily inconsistent with Dr. Comeau's earlier opinion that Plaintiff could walk for a total of two hours in an eight-hour workday.

Moreoever, as Plaintiff persuasively argues, the two opinions from Dr. Comeau are not inconsistent with one another; the latter is simply more descriptive. The first assessment found that Plaintiff could sit for six hours in an eight-hour workday and stand or walk for two hours in an eight-hour workday, but the questionnaire did not contain any questions regarding the need to alternate between sitting and standing. Id. at 175. In the later assessment, Dr. Comeau indicated that Plaintiff required an option to alternate between sitting and standing. Id. at 292. Significantly, the earlier assessment did not question Dr. Comeau regarding Plaintiff's non-exertional limitations such as climbing, balancing, kneeling, crouching, or crawling. Accordingly, no opinion was expressed as to these limitations. In the later form, which contained more detailed questions, Dr. Comeau opined that Plaintiff was limited to occasional climbing and could never balance, kneel,

9

crouch, crawl, or stoop; could only occasionally handle, finger, and feel due to peripheral neuropathy in the feet and hands; and was limited in seeing. Id. at 293. Dr. Comeau went on to state that these limitations had existed since Plaintiff's alleged onset date of January 21, 2003, during which time Dr. Comeau had been treating Plaintiff. Such a retrospective opinion from a treating source is entitled to controlling weight unless contradicted by other medical evidence or overwhelmingly compelling non-medical evidence. See Rivera v. Sullivan, 923 F.2d 964, 968 (2d Cir. 1991); Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988).

The ALJ in this case failed to give a proper explanation for his decision not to afford controlling weight to the treating source opinions. The only reasons given for discounting the treating physician's opinions were that the latter opinion was inconsistent with the former, and that Plaintiff had testified to more extensive functional capacities than those indicated by the earlier opinion. Tr. at 18. For the reasons laid out above, this analysis is unsupported by the record. Further, the ALJ failed to analyze any of the factors laid out in 20 C.F.R. § 404.1527(d): the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. This case is therefore remanded for a proper evaluation of Dr. Comeau's opinions, with due consideration given to the factors laid out at 20 C.F.R. § 404.1527(d).

D.    Residual Functional Capacity and the Grids

Plaintiff argues that the ALJ erroneously evaluated his RFC. Pl.'s Br. at 17-19. Specifically, Plaintiff contends that the ALJ failed to take into account Plaintiff's non-exertional impairments and Plaintiff's need to alternate between sitting and standing. *Id.* These limitations were attested to by Dr. Comeau in his second medical source statement, dated April 28, 2004 and discussed above.

Plaintiff argues that after failing to properly incorporate the full extent of Plaintiff's limitations into the RFC assessment, the ALJ erred by relying exclusively on the grids and failing to consult a vocational expert.

Because the ALJ failed to properly assess Dr. Comeau's opinions under the treating physician rule, it is unclear whether Plaintiff's non-exertional impairments and alternating sit-stand requirement are limitations which should have been included in the final RFC assessment. On remand, if Plaintiff is found to have significant non-exertional limitations, the ALJ is directed to obtain vocational expert testimony to aid in determining whether he can perform his past relevant work or other work existing in significant numbers in the national economy. See Rosa v. Callahan, 168 F.3d 72, 82 (2d Cir. 1999). The extent of Plaintiff's need to alternate between sitting and standing should also be addressed, with clarifying opinions obtained from Plaintiff's treating sources if necessary. See SSR 99-6p[6], 1996 WL 374185, *7 (S.S.A. 1996).

Additionally, on remand the ALJ is directed to consider the effects of Plaintiff's obesity on his RFC in accordance with SSR 02-1p, which requires the ALJ to consider the effects of obesity on

---

[6] This ruling discusses the need to alternate between sitting and standing as it affects the occupational base for sedentary work:

> **Alternate sitting and standing**: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 99-6p, 1996 WL 374185, *7 (S.S.A. 1996).

an individual's health at all steps in the sequential evaluation process, but does not automatically require an ALJ to find an obese claimant disabled because of his or her obesity. 2000 WL 628049, *4 (SSA 2002); see Fox v. Astrue, 2008 WL 828078, *11 (N.D.N.Y. Mar. 26, 2008).

E.    Credibility

Plaintiff argues that the ALJ failed to properly credit his subjective complaints of pain. Pl.'s Br. at 20-22. The ALJ is entitled to evaluate a claimant's credibility and reach an independent judgment regarding subjective symptoms in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms. See Mimms, 750 F.2d at 185. The ALJ must perform a two-step analysis. See 20 C.F.R. § 404.1529; see also Crouch v. Comm'r, Soc. Sec. Admin., No. 6:01-CV-0899 LEK/GJD, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citation omitted). First, based upon the objective medical evidence, the ALJ must determine whether the impairments "could reasonably be expected to produce the pain or other symptoms alleged ...." 20 C.F.R. §§ 404.1529(a), 416.929(a); see Crouch, 2003 WL 22145644 at *10. "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work." Crouch, 2003 WL 22145644 at *10 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors, such as daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p.

12

Accordingly, "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence." Paratore v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks, citation omitted); see Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

In considering Plaintiff's credibility, the ALJ stated:

> The claimant's testimony is not supported by the medical signs and clinical findings and it is also not supported by his treating or consulting physicians, none of whom have opined that the claimant is totally disabled, or have provided medical assessments to that effect prior to the date last insured.

Tr. at 19. The ALJ went on to discuss Plaintiff's statements in a disability report, in which he stated that he took his dog for walks, took care of his personal needs, prepared meals, read the newspaper, watched television, fed and bathed his pets, made his bed, went outside three times per day, drove, went shopping with his wife, and paid his bills. Id. at 20.

The Court finds that the ALJ's rationale for discounting Plaintiff's subjective complaints was not adequately explained. The ALJ gave no specific medical findings in support of his assertion that Plaintiff's complaints were not supported by the "medical signs and clinical findings." Moreover, Plaintiff's treating physician, Dr. Comeau, actually did opine on September 8, 2003 – prior to Plaintiff's insured status expired – that Plaintiff was disabled, and provided two opinions detailing Plaintiff's limitations. Tr. at 177, 292-93. Rather than provide objective medical evidence contradicting Dr. Comeau's opinions and undermining Plaintiff's subjective complaints, the ALJ simply cited Dr. Comeau's findings and once again stated that Plaintiff had testified that, prior to the expiration of his insured status, Plaintiff had no limitations in walking. Id. at 20. As already

13

discussed above, this was a mischaracterization of Plaintiff's testimony, and, in any event, was not sufficient reason to discount Plaintiff's credibility.

For the foregoing reasons, the ALJ's reasoning for discrediting Plaintiff's subjective complaints was not adequately articulated, and the Court is thus unable to determine whether the ALJ's decision was grounded in substantial evidence of record. Accordingly, on remand, the ALJ is directed to reassess Plaintiff's credibility.

### III.  Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED,** that the decision denying disability benefits is **REVERSED** and **REMANDED** for further consideration in accordance with this decision; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:       July 02, 2008
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge